Opinion by
Will-son, J.
§ 253. Exemption laws; construction of. “ Statutes of exemption are contrary to the common law, and their operation has, in some instances, been very much limited by the rule, that statutes in derogation of the common law must be strictly construed. Where this rule prevails no property can be successfully claimed as exempt, which does not clearly appear to be embraced within the specification contained in the statute. But in most of the states it does not prevail. Exemption laws are occasionally perverted from their laudable purposes. They sometimes enable debtors in comfortable circumstances to bid defiance to creditors more impoverished than themselves. They sometimes assist scoundrels to consummate the most cruel frauds. But in the vast majority of cases their operation is highly meritorious. They often assure to the family the shelter of a home, the means of obtaining a livelihood, and the earnings of its natural head and protector. They mitigate the harshness of the cruel and grasping creditor, and give to most unfortunate of debtors a place of refuge and a gleam of hope. Because of their meritorious purposes and their remedial character, the courts have generally treated them with the utmost consideration, and have been inclined to extend, rather than to restrict, their operation. Hence, the rule is well supported and is constantly growing in favor, that exemption laws, being remedial, beneficial and humane in their character, must be liberally construed. Wherever this rule prevails, and it does not *194 clearly appear whether certain property is, or is not, embraced within the exempting statute, the debtor will generally be allowed the benefit of the doubt, and suffered to retain the property.” [Freeman on Executions, § 208.] This rule of liberal construction of exemption laws has prevailed in our own state from the earliest decisions down to the present time. [Cobbs v. Coleman, 14 Tex. 594; Anderson v. McKay, 30 Tex. 186; Rogers v. Ferguson, 32 Tex. 533; Allison v. Brookshire, 38 Tex. 199; Alexander v. Holt, 59 Tex. 205; Watkins v. Davis, 3 Law Reporter, 3; W. & W. Con. Rep. §§ 513, 951.] In Watkins v. Davis, supra, our supreme court say: “ Our courts have at all times construed the exemption laws most favorably to those for whom the benefits were intended.”
§ 254. Same; a jackass is exempt property under our statute. Our statute reserves to every head of a family, exempt from attachment or execution, and every other sp nies of forced sale for the payment of debts, certain specific articles of property. A jackass is not specifically named as one of the exempt articles. Tin's animal, therefore, does not come within the letter of the statute. If exempt at all, it must be under the provision exempting two “ horses.” [R. S. art. 2335.] Is a jackass to be considered a horse, within the meaning, spirit and purpose of this statute? This precise question has not been decided by the courts of this state. The nearest approach to it was in Allison v. Brookshire, 38 Tex. 199, where it was held that, a mule was a horse, within the meaning of our exemption statute. In Tennessee, under a statute similar to ours, the precise question has been determined, and a jackass was held to be exempt property. [Richardson v. Duncan, 2 Heisk. 220.] It was there said as follows: “ If, in a criminal case, it is allowable to hold that a mule is a horse, if he is used in racing .along a big road, much more is it allowable to hold that a jackass used for farming purposes is either a horse, mule or ox. But we are not without high philological authority for construing the word ‘ horse,’ used in the *195 statute, as including the ‘ass.’ Mr'. Webster, in his unabridged and illustrated dictionary, defines an ass to be ca quadruped of the genus equus, that is, equus asinus,— having a peculiarly harsh bray, long, stretching ears, and being usually of an ash color, with a black bar across his shoulders. ’ The tame or domesticated ass is patient to stupidity, and slow.’ Then the ass is a species of the genus equus, or horse. His value for agricultural purposes was one of the lucky developments of the late war. Some who resorted to this species of horse for such purposes, from dire necessity, continue.to use him, either from choice or continued necessity.” And so, here in Texas, it is no uncommon thing for this animal to be used both for riding and agricultural purposes. He is often made to supply the place of his more fashionable, active and valuable relative — the horse. We ai’eof the opinion that a liberal construction of our exemption statute includes within the meaning of the word “ horse ” the animal of the same gexxus called the “ ass,” mf which species the “jackass” is the male. But it is urged that this construction is not proper, unless it ap-. pears that the axiimal is used as a hox’se, that is, used for x’iding, ploughing, etc.; that, if he is used merely for breeding purposes, he is not within the spirit of the law, axxd is not exempt. We canxxot so ixiterpret the statute. It is not required by the terms of the statute, as it is in Alabama, that the horse exempted must be a work-horse. [Allman v. Gaun, 29 Ala. 240.] Nor are the horses exempted by our statute exempted for specific uses, as they ax’e ixi the California statute. [Robert v. Adams, 38 Cal. 383.] .Our exemption is general, uxxrestricted and unconditional, and is unlixnited as. to the value of the axximal. It extexxds to all classes of our citizens. It includes the valuable trotter or racer, worth thousands of dollar’s, as well as the compax’atively valueless Mexican pony; the magnificent span of horses driven by the man of wealth, as well as the worn-out team of the laborer. Such is the law of this state. *196 Whether it be just, equal and wise, or unfair and inequitable, is not for us to determine. It is very true that, under this construction of the law, a debtor may invest a large sum of money in two valuable stallions or jackasses, and in this way defraud his creditors. He may do the same thing, on a much larger scale, in the matter of a homestead. He may invest an unlimited amount in a homestead, and, from a hundred thousand dollar palace, bid defiance to his creditors. In Rogers v. Ferguson, supra, it was held that a wagon was exempt, for whatever use employed, whether for the transportation of property or persons. And so, we think, as to a horse or other exempt article, its exemption is not dependent upon its use. In this case, the facts in evidence proved that the jackass was exempt property, and the sale thereof under execution was illegal, and the plaintiff was entitled to recover in this suit.
June 11, 1884.
Reversed and remanded.