283 P.2d 881

Blanche C. RICHARDS, Plaintiff-Appellant,

v.

Ernest W. RICHARDS, Defendant-Appellee.

No. 5843.

Supreme Court of New Mexico.
May 10, 1955.

W. T. O'Sullivan, Heister H. Drum, Albuquerque, Edward M. Campbell, Farmington, for appellant.

McAtee & Toulouse, Albuquerque, for appellee.

COMPTON, Chief Justice.

The decisive question is whether compensation benefits payable under the Workmen's Compensation Act, § 59–10–1 et seq., 1953 Comp., for injuries sustained during coverture, are community assets.

The parties were married in November, 1947. On or about January 5, 1953, while employed by El Paso Natural Gas Company in Farmington, appellee sustained an accidental injury which rendered him totally and permanently disabled, and since has been drawing weekly benefits of $30. Subsequently, appellant brought this action and pursuant to a restraining order, the weekly payments were impounded pending a hearing upon the merits. At the hearing on the merits, she was granted a divorce and was awarded certain property of the community. Appellee was awarded the remaining share of the community, also the money thus previously impounded. Feeling aggrieved, appellant brings the claimed error here for review. The appeal only concerns the impounded funds.

It is the contention of appellant that compensation is in lieu of wages, and since wages received by the husband are community assets, it follows compensation likewise is a part of the assets of the community. Appellee as strongly contends that compensation as contemplated by the Act is to recompense the workman for disability suffered; hence, is personal to him and constitutes his separate property.

Appellee is 65 years of age, totally and permanently disabled; appellant is a stenographer and bookkeeper. The trial court found she was in good health, able to work and was presently employed. Obviously, it was for these reasons that appellee was relieved from any further duty to support her.

After a careful consideration, we are of the opinion a fair interpretation of the Workmen's Compensation Act requires a negative answer to the inquiry. Dependency alone furnishes the test of appellant's right to recovery, and so long as the injured workman survives, there can be no dependency within the meaning of the Act. Sections 59–10–13 and 59–10–17, 1953 Comp. Mere marital status is unimportant. Rumley v. Middle Rio Grande Conservancy District, 40 N.M. 183, 57 P.2d 283; Tocci v. Albuquerque & Cerrillos Coal Co., 45 N.M. 133, 112 P.2d 515; Merrill v. Penasco Lumber Co., 27 N.M. 632, 204 P. 72; Hammonds v. Commissioner of Internal Revenue, 10 Cir., 106 F.2d 420; Barney Cockburn & Sons v. Lane, 45 N.M. 542, 119 P.2d 104.

Our Workmen's Compensation Act was enacted in 1929, Chapter 113, and the title of the Act itself gives added weight to the conclusion reached. In part, it reads:

"An Act Providing for Compensation of Workmen Engaged in Certain Occupations, and, *in Case of Death,*

Their *Dependent* Families, *. *. *." (Emphasis ours.)

Prior to the enactment of Chapter 65, Laws of 1945, § 59–10–25, 1953 Comp., amending § 57–925, 1941 Comp., it seems clear compensation was awarded on the basis of loss of earnings. The employer or insurer could require one who had been awarded compensation to appear for a medical examination and if his *earning power* had increased since the award, his compensation payments could be reduced accordingly. By the 1945 amendment, the employer, workman, or others bound by the judgment, are entitled to a hearing on the question of a decrease or an increase in the award, and the standard established by the latter Act is the disability of the workman, not his earning power. In other words, the change in *disability,* which is in fact injury, justifies the change in the award; increase or decrease in earning power is no longer the yardstick. We believe the change brings the case within the rule of Soto v. Vandeventer, 56 N.M. 483, 245 P.2d 826, 35 A.L.R. 1190, and gives us additional reason for holding compensation payments are the separate property of the party injured.

The question was also before the Louisiana Court in Brownfield v. Southern Amusement Co., La.App., 198 So. 670, 673, wherein the plaintiff husband intervened in which he made the claim that compensation payable to the wife, belonged to the community. The court in disposing of his claim, said:

"The compensation action has yet to be defined by the courts. It has been held not to be an action on contract or in tort or on insurance. We are of the opinion it stands by itself and is properly defined as a compensation action. If we are correct in this, we need look no further than the act itself to find who has the right to stand in judgment in such an action. *We think the act makes it clear that: funds received as compensation payments do not fall into the community of acquêts and gains just as wages do, for the act prohibits the attachment or seizure of compensation awards by creditors of the compensation payee.* There are many other provisions of the act which demonstrate that compensation payments are treated and are to be treated differently than any other funds awarded to a claimant by the courts. The Compensation Law is a separate and distinct law from any other or branch of law and is governed solely by the provisions of the act creating it." (Emphasis ours.)

Also see Brownfield v. Southern Amusement Co., 196 La. 73, 198 So. 656.

There is found a discussion of the question by Joe W. Wood, Esq., Assistant

Director, Legal Counsel Service, in his report to the Senate Interim Committee on Community Property pursuant to Senate Resolution No. 3, Twenty-First Legislature, at section 61 of this report. We observe that the recent Twenty-Second Legislative Session considered other phases of the Act but took no action on the subject under consideration. Such failure may be interpreted as a legislative understanding of the question.

We note that other jurisdictions, Texas, Arizona, and California, apparently reach a different conclusion; however, the decisions from those jurisdictions, Pickens v. Pickens, 125 Tex. 410, 83 S.W.2d 951; Texas Employers' Ins. Ass'n v. Boudreaux, Tex.Com.App., 231 S.W. 756; Northwestern Redwood Co. v. Industrial Accident Commission, 184 Cal. 484, 194 P. 31; Dawson v. McNaney, 71 Ariz. 79, 223 P.2d 907, cited by appellant, are distinguishable, since they were controlled by statutes peculiar to those states and unlike our own.

Strong reliance is accorded, 1 de Funiak, § 68, on the Principles of Community Property, in which the author says compensation benefits are community property. But cited in support of the text are the Texas and California cases only, which we have distinguished.

We conclude that the compensation payments are the separate property of appel-lee. The judgment will be affirmed, and It Is So Ordered.

LUJAN, McGHEE and KIKER, JJ., concur.

SADLER, J., dissenting.

SADLER, Justice (dissenting).

The conclusion announced by the majority in the prevailing opinion offends both reason and justice. In it they either forget, or consciously ignore, the whole philosophy out of which workmen's compensation as a state policy arose and has so long survived. Gonzales v. Chino Copper Co., 29 N.M. 228, 222 P. 903; Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1.

The majority readily employ the measure prescribed by the Act to fix the amount of the workman's compensation, viz., a specified percentage of his average weekly earnings over a stated period, 1953 Comp. § 59–10–18, in which the wife has an unquestioned community interest. Then, surprisingly, they cast aside this statutory measure for fixing weekly compensation as the decisive factor in determining character of the fund it produces. Since a stated percentage of average weekly earnings of the workman over a stated period, in which the wife concededly has a community interest, is made the measure of what the workman is to receive as compensation,

it seems only reasonable and fair to assume the fund thus arising as compensation would take on the same character in his hands as that enjoyed by the earnings it replaces. But not so under the false logic followed by the majority!

The prevailing opinion to the contrary notwithstanding, compensation is still awarded in New Mexico on the basis of loss of earnings. The supposed change wrought in this connection by L.1945, c. 65, 1953 Comp. § 59–10–25, is the product of imagined legislative intent and, hence, a pure myth. Naturally, a change in disability enters the equation but only as it may affect the earning power. Any change in the compensation brought about by an increase or decrease in percentage of disability is still to be governed by and fixed within the statutory limits as to amount, measured by the average weekly *earnings* over a stated period. The prevailing opinion is leaning on a slender reed, indeed, when it is rested on this supposed change. The cases the majority cite from Arizona, California and Texas are direct authority against them and are not to be disregarded by reason of any supposed statutory differences.

The reasoning the majority employ, destructive as it is of the rights of the wife, fails to invoke my concurrence. Quite the contrary, it compels an abiding and unrelenting dissent on my part.